UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

               Plaintiff,                  Case No. 16-20514-2
                                                   Honorable Linda V. Parker

v.

D-2, CALVIN ATTYBERRY,

               Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS SEARCH OF RESIDENCE AND FOR EVIDENTIARY HEARING [ECF NO. 53]

On August 3, 2016, Defendant Calvin Attyberry ("Defendant") was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); one count of possession of a machine gun in violation of 18 U.S.C. § 922(o)(1); and one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. (ECF No. 14.)

On September 20, 2016, this Court set a scheduling order requiring all pretrial motions be filed by November 14, 2016. (ECF No. 40.) On February 14, 2017, Defendant filed an untimely motion to suppress the evidence obtained during a search of his home. (ECF No. 53.) Defendant seeks to suppress evidence deriving from the search of Defendant's home that occurred on June 25, 2016. (*Id.*

at Pg ID 242.)  The government filed a response on March 7, 2017, articulating why Defendant's motion to suppress should not be granted.  (ECF No. 65.)  This Court held a hearing on the motion on May 2, 2017.  (ECF No. 69.)

## I.    Factual and Procedural Background

On June 25, 2016, at approximately 2:00 a.m., officers of the Michigan State Police executed a search warrant at Defendant's home, located at 1383 W. Humphrey Ave, Mount Morris Township, Michigan.  (ECF No. 53 at Pg ID 242; Mot. to Suppress Hr'g Tr. 35:24-36:14.)  At his home, state police recovered the following: ".223 caliber machine guns with affixed silencers, two handguns, mason jars containing marijuana, and substances suspected to be cocaine."  (ECF No. 65 at Pg ID 369.)

The affidavit used in support for the search warrant was signed by 67th District Court Judge Vikki Bayeh-Haley.  The affidavit provided the following information related to Defendant's address:

> 25.  BROOKS advised Sgt. Zook he physically observed marijuana, cocaine, and guns on 06/24/2016 and 06/20/2016 at "D's" residence (1383 W. Humphrey Ave, Mount Morris Township, Michigan).

(ECF No. 65-3 at Pg ID 386.)  The affidavit does not state how the affiant determined that D's residence was at 1383 W. Humphrey Ave.

In their opposition brief for the motion, the government contends that they learned the address of Mr. Attyberry's home through their interview with Sheldon

Brooks. Brooks was stopped for a traffic violation on June 24, 2016 by Sergeant Duane Zook and Trooper Evan Nielson. (ECF No. 65 at Pg ID 366.) Brooks consented to a search of his person and car. (*Id.* at Pg ID 367.) During the course of the search, the police found marijuana amounting to 24 ounces and a bottle of promethazine with codeine syrup. (*Id.*)

Brooks waived his *Miranda* rights and the officers interviewed him in their patrol car before driving him to the Michigan State Police post. (*Id.* at Pg ID 368.) Sergeant Zook then interviewed Brooks. During the course of the interview, Brooks said that "D" was the owner of the marijuana. (*Id.*) When asked where "D" lived, Brooks was unable to give his address but stated he knew where the house was located. (*Id.*) In response, Sergeant Zook stated: "[w]e can't exactly go by the house with you in a state police car…we can't do that can we?"

The issue of where Defendant lives is not resolved during the course of the video interview of Brooks. After the filing of Defendant's motion to suppress, the government filed a supplemental incident report dated March 7, 2017 that states:

> On the above listed time and date [Saturday, June 25, 2016] reporting officers were requested by Sgt Zook to take SHELDON BROOKS up to Humphrey ave [*sic*], west of Detroit st [*sic*] and have him point out a house so that we could get the physical description and address of the house.
>
> BROOKS pointed out 1383 W Humphrey ave [*sic*] to officers.
>
> BROOKS was then transported back to the State Police Post in Flint and the information on this residence relayed to Sgt Zook.

(ECF No. 65-2 at Pg ID 383.)  Defendant argues that the affidavit in support of the search warrant falsely suggests that Brooks made a clear identification of Defendant's address.  (ECF No. 53-1 at Pg ID 247.)

Further, Defendant argues that the affidavit failed to disclose that Brooks lied about facts related to his marijuana possession.  For example, Brooks swore he did not know where the marijuana came from during his interview.  (*Id.*)  Defendant argues that the government failed to introduce facts demonstrating that Brooks likely was not credible to mislead the reviewing judge to authorize the search.  (*Id.* at Pg ID 247-48.)

The Court held a hearing on this motion on May 2, 2017.  During the hearing, the government presented four witnesses: Trooper Pat Barrigar, Richard Doehring, Sergeant Duane Zook, and Trooper Evan Nielson.  A timeline of events became clearer during the course of their testimonies.

Mr. Barrigar stated that on the evening of June 24th, he drove Brooks in a fully marked state police car to Humphrey Avenue.  Mot. to Suppress Hr'g Tr. 6:12-14; 7:2-18; 9:20-10:5.[1]  Mr. Barrigar stated the location of Humphrey Avenue was provided to him by both Sergeant Zook and Brooks

---

[1] The Court notes that Mr. Barrigar's testimony regarding the date of the drive conflicts with his supplemental incident report, which states that the drive to Humphrey Avenue took place on Saturday, June 25, 2016.  (ECF No. 65-2 at Pg ID 383.)

prior to the drive. *Id.* at 11:7-15. Once on Humphrey Avenue, Brooks identified a house that matched the physical description of the home that had been given to Mr. Barrigar prior to the drive. *Id.* at 7:20-23.

Mr. Doehring accompanied Mr. Barrigar and Brooks on the drive to Humphrey Avenue. *Id.* at 6:17-20. During his testimony, Mr. Doehring stated that on June 24th, Sergeant Zook gave him the description of the area where the home was located. *Id.* at 13:23-25; 14:24-15:3. After receiving the description from Sergeant Zook, Mr. Barrigar drove Mr. Doehring and Brooks to Humphrey Avenue. *Id.* at 14:25-15:11.

Sergeant Zook testified that he did not recall whether Brooks identified the name of the street during his recorded interview at the Flint post. *Id.* at 44:19-25. Further, he stated that he did not give any officers the name of the street because he himself did not have the name of the street prior to the drive taken by Barrigar, Doehring, and Brooks. *Id.* at 52:2-10. Sergeant Zook noted that Brooks had indicated he could drive from the post to the location of the home, even though he could not identify the address based on memory. *Id.* at 44:24-25.

Trooper Nielsen, the last witness, drafted and signed the affidavit used to obtain the search warrant in this case. *See id.* at 67:11-15. Trooper

Nielsen testified that he was aware that Brooks informed Sergeant Zook that he did not know the address of "D's" home.  *Id.* at 73:19-24.

## II.  Applicable Law & Analysis

Generally, the Fourth Amendment of the United States Constitution requires officers to obtain a warrant prior to conducting a search. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). "A warrant will be upheld if the affidavit provides a 'substantial basis' for the issuing magistrate to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id*. at 652 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  In other words, "the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'  There must be a "'nexus between the place to be searched and the evidence sought.' " *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).  "To meet the nexus requirement, '[t]he connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Fritts*, No. 16-20554, 2016 WL 7178739 at *3 (E.D. Mich. Dec. 9, 2016) (quoting *United States v. Brown*, 828 F.3d 35, 382 (6th Cir. 2016).

A reviewing court must afford great deference to a magistrate judge's probable cause determination.  *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc); *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993).  As

such, a magistrate judge's decision to grant a search warrant should be reversed only if it was arbitrarily exercised.  *Allen*, 211 F.3d at 973; *Finch*, 998 F.2d at 352.

The probable cause standard is a "practical, non-technical conception" guided by the "factual and practical considerations of everyday life." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *Gates*, 462 U.S. at 231). "Courts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (citations omitted).  "[R]eview of an affidavit and search warrant should rely on a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *Id*.  The court's review, however, is limited to the four corners of the affidavit.  *Frazier*, 423 F.3d at 531.

The Supreme Court has held that evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective generally does not need to be suppressed.  *Id*. at 533 (citing *United States v. Leon*, 468 U.S. 897, 905 (1984)).  The relevant inquiry is an objective one, asking "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. (citing *Leon*, 468 U.S. at 922-23 & n.23.)  This "good faith" exception is not applicable where: 1) the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth";

2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[]"; or 4) the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923 (citations omitted). In this matter, the critical issue is whether there is a "'nexus between the place to be searched and the evidence sought.' " *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

This motion turns on two issues: (1) whether Brooks' statement to Sergeant Zook was sufficiently credible as the basis for the affidavit and (2) whether the affidavit sufficiently provided a connection between Defendant's home and the "evidence of the criminal activity", which is the possession of marijuana, cocaine, and guns according to Brooks' testimony during his interview at the Flint post.

### A. Credibility of the Informant

Defendant argues that the affidavit does not provide any information to determine that the informant was reliable, nor does it show any corroboration by the police to determine credibility. (ECF No. 53-1 at Pg ID 250.) The Sixth Circuit has found that a "known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the informant has never provided information to the police in the past." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013);

*see also United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002) (finding that a named informant that had never provided information to the police and therefore did not have a history of reliability sufficient where his identity was known and therefore, the informant would be subject to prosecution if this information was fabricated.)  The knowledge of an informant's identity makes a finding of credibility "even clearer when the known informant's decision to go to police has also subjected [the informant] to potential prosecution." *Kinison*, 710 F.3d at 683; *Miller*, 314 F.3d at 270 ("The simple fact is that the informant, Haas, was named in the affidavit in question.  Sheriff Fee spoke to Haas on two occasions over the telephone.  Shortly after one of those calls, Sheriff Fee and Haas drove together to the location of Miller's mobile home…Moreover, with Haas's identity secured, Haas himself was subject to prosecution if this information was fabricated"); *United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004) (finding an informant more credible when their identity was "known to the officers and…named in the affidavit," and where informant was subject to prosecution).

Here, the police had knowledge of the informant's identity.  The informant's identity was used in the affidavit, and therefore was known to the magistrate judge.  The Court notes that according to Sergeant Zook's testimony, Brooks did not consent to his name being used in any paperwork.  Mot. to Suppress Hr'g Tr. 26:6-11.  However, Sergeant Zook chose to use Brooks' identity based on a

conversation with the county prosecutor, who "advised she would not authorize a search warrant without [Brooks] being named." *Id.* at 34:21-35:6. While the Court finds the use of Brooks' name troubling without his consent, it is clear that the knowledge of his identity opened him up to prosecution if he provided false information. Further, Brooks had knowledge that he would remain under police custody unless he provided information that helped officers find "D." *See id.* at 36:22-37:4 ("After everything was complete, I contacted the Flint City Jail to have [Brooks] released….[b]ecause the search warrant was fruitful."). Therefore, this Court finds that the statement provided by Brooks to Sergeant Zook was sufficiently credible as the basis for the affidavit.

## B. Nexus of Home and Evidence of the Criminal Activity

The affidavit states that Brooks alleged he personally saw marijuana, cocaine, and guns on two occasions at "D's" residence, the date of Brooks' arrest and four days prior. (ECF No. 65-3 on Pg ID 386.) While there is no explanation for how "D's" address was determined in the affidavit, this Court is required to rely on a "totality of the circumstances" analysis in evaluating the sufficiency of the warrant. *Greene*, 250 F.3d at 479 (internal citations omitted). The affidavit included information on what items were likely to be obtained at "D's" residence, prior instances where the witness had observed marijuana, cocaine, and guns, and

the address of "D's" residence.  Based on a totality of the circumstances view of the affidavit, the Court finds the affidavit sufficient for a finding of probable cause.

The Court notes that counsel for the government admitted during the hearing that the affidavit would be stronger if officers had included information describing how Defendant's address was obtained.  However, as counsel stated, this lack of information alone does not nullify a finding of probable cause.  To overturn the magistrate judge's decision to grant a search warrant, this Court would have to find that the decision was arbitrarily exercised.  *Allen*, 211 F.3d at 973.  The Court is unable to make such a finding in this case.

Therefore, this Court is denying Defendant's motion.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Suppress Search of Residence and for Evidentiary Hearing (ECF No. 53) is **DENIED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 31, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 31, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager
